UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

VALGENE SUTHERLAND,

     Plaintiff,

v.

RED BULL DISTRIBUTION COMPANY, INC.,

     Defendant.

2:12-cv-00718-PMP-CWH

ORDER

Before the Court is Defendant Red Bull Distribution Company, Inc.'s Motion for Summary Judgment (Doc. #26), filed on March 21, 2013. Plaintiff filed an Opposition (Doc. #28) on April 6, 2013. Defendant filed a Reply (Doc. #30) on April 24, 2013.

**I. BACKGROUND**

Defendant Red Bull Distribution Company ("RBDC") is the largest distributor in North America of Red Bull energy drink products. (Def.'s Mot. Summ. J. (Doc. #26) ["MSJ"], Ex. 1 at ¶ 3.) Plaintiff Valgene Sutherland ("Sutherland") worked as an employee of RBDC from 2008 to June 2011 at the Las Vegas distribution center. (MSJ, Ex. 2 at 15.) Sutherland's duties revolved around delivering product refrigerators to customers. (Id. at 33.) RBDC terminated Sutherland on June 21, 2011. (MSJ, Ex. 7.) This dispute arises from the parties' disagreement over the reason for that termination.

     **A. Wage Garnishment Activity**

Sutherland alleges that RBDC fired him to avoid its obligations in connection with potential wage garnishment activity initiated against Sutherland by the Texas

1  Guaranteed Student Loan Corporation ("TG"), which was servicing Sutherland's student
2  loan.  (Notice of Removal (Doc. #1), Ex. 1 at 2.)  On March 23, 2011, TG sent a letter to the
3  Red Bull North America office in Santa Monica, California.  (MSJ, Ex. 8.)  The Santa
4  Monica office handles payroll processing for RBDC.  (MSJ, Ex. 3 at 41.)  The letter asked
5  for Red Bull's assistance in locating and verifying Sutherland's employment.  (MSJ, Ex. 8.)
6  It made no mention of potential wage garnishment.  (Id.)  However, TG's collection records
7  indicate that before the March 23, 2011 letter was sent, TG already had been informed by
8  RBDC that wage garnishment requests should be forwarded to the Santa Monica office.
9  (Pl.'s Opp'n to Def.'s Mot. Summ. J. (Doc. #28), Ex. 1 at 7.)

10  RBDC terminated Sutherland's employment on June 21, 2011.  (MSJ, Ex. 7.)  On
11  June 28, 2011, TG sent to Red Bull's Santa Monica office a copy of a Notice Prior to
12  Administrative Wage Garnishment, which informed Sutherland that his wages would be
13  garnished unless he took action.  (MSJ, Ex. 9.)  TG officially sought to garnish Sutherland's
14  wages from Red Bull on August 4, 2011, by sending an Order of Withholding From
15  Earnings to Red Bull's Santa Monica Office.  (MSJ, Ex. 10.)  Red Bull subsequently
16  informed TG that Sutherland's employment had been terminated on June 21, 2011.  (MSJ,
17  Ex. 11.)

18  **B.  Sutherland's Timekeeping Issues**

19  RBDC contends that Sutherland was terminated for clocking in on a day when he
20  did not come to work.  (MSJ, Ex. 4 at 38.)  There had been issues with Sutherland's
21  timekeeping prior to this date.  Sutherland initially had used his personal vehicle to make
22  deliveries as part of his job, for which he was compensated for mileage.  (MSJ, Ex. 2 at
23  31–32, 41, 57.)  Eventually he was provided with a company vehicle to use and
24  consequently he stopped receiving mileage compensation.  (Id. at 33.)  According to
25  Sutherland, he subsequently entered into an oral agreement with the former branch manager
26  that he could clock in earlier than he was actually arriving to compensate for not receiving

mileage reimbursement anymore. (Id. at 56–57.) When this came to the attention of the new branch manager, Steve Crudo ("Crudo"), Crudo informed Sutherland, on June 13, 2011, that he no longer would be allowed to clock in early. (MSJ, Ex. 6 at ¶¶ 3–4.) Also present at this meeting was key accounts manager Bryce Ondell ("Ondell"). (Id. at ¶ 3.)

On June 17, 2011, Crudo discovered that Sutherland had clocked in for June 6, a day that Sutherland had not actually worked. (Id. at ¶ 5.) Sutherland contends that clocking in for June 6 was a mistake. (MSJ, Ex. 2 at 67.) Sutherland was aware of the mistake, but he did not bring this error to anyone's attention, even though he knew that he or a manager could modify a time entry. (Id. at 78, 45.)

Before firing Sutherland, Crudo contacted Roberta Hernandez ("Hernandez"), RBDC's director of Human Resources, who works in the Santa Monica office. (MSJ, Ex. 1 at ¶ 2, Ex. 4 at 39.) Hernandez approved the termination. (MSJ, Ex. 1 at 6.) Hernandez testified that as the director of Human Resources of Red Bull, which has over 1,200 employees, she does not handle or have knowledge of employee garnishment issues and that she was not aware of Sutherland's student loan issues with TG until after Sutherland's termination. (Id. at ¶¶ 7–8.) Likewise, Crudo and Ondell testified that they had no knowledge of Sutherland's student loan until this action commenced. (MSJ, Ex. 6 at ¶ 9, Ex. 5 at 23–24.) There is no evidence that anyone other than Hernandez, Crudo, and Ondell was involved in Sutherland's termination. (See MSJ, Ex. 5 at 25.)

**C. Procedural History**

Sutherland brought suit in state court, claiming that RBDC fired him due to the potential garnishment activity and asserting that RBDC was liable for negligent supervision, intentional infliction of emotional distress, and wrongful termination. (Notice of Removal (Doc. #1), Ex. 1.) RBDC removed the case to this Court on April 30, 2012. (Notice of Removal.) Sutherland thereafter voluntarily dismissed his claim for intentional infliction of emotional distress. (Stip. & Order of Dismissal (Doc. #10).) RBDC moved to dismiss the

Amended Complaint, which the Court denied without prejudice to renew the arguments in a motion for summary judgement.  (Order (Doc. #22).)

RBDC now moves for summary judgment on Sutherland's wrongful termination claim.  RBDC argues that Sutherland has no claim that RBDC fired him in violation of Nevada public policy because there is no strong Nevada public policy protection for potential future garnishment or garnishment activity, nor does the federal statute upon which Sutherland relies protect potential future garnishment activity.  RBDC further contends that there is no causal connection between the Notice of Potential Future Garnishment Activity and Sutherland's termination because Sutherland was terminated before RBDC received the notice, and the decision makers had no knowledge of Sutherland's student loan or the potential for garnishment at the time they decided to fire Sutherland.

RBDC also moves for summary judgment on Sutherland's negligent supervision claim.  RBDC argues that it owed no duty to insure that its agents avoid violating a federal law regarding student loans in the performance of their duties, that there was no breach of the alleged duty, that there is no causal connection between the alleged duty and the damages, and that Sutherland did not suffer any physical harm or injury.

Sutherland responds that genuine issues of fact remain as to RBDC's knowledge of TG's garnishment activity.  Sutherland contends he has a private right of action under 20 U.S.C. § 1095a because RBDC was put on notice of the garnishment proceedings before terminating Sutherland by TG's employment verification letter and the fact that TG had confirmed that wage garnishment requests should be sent to the Santa Monica office. Sutherland further contends that Hernandez, as the Director of Human Resources, is presumed to have had actual or constructive knowledge of the garnishment activity against Sutherland.  Sutherland also maintains that RBDC violated § 1095a, and that violation of a federal statute by an employer constitutes outrageous behavior giving rise to a tortious

discharge action under Nevada public policy.

Sutherland also responds that genuine issues of fact remain as to whether his timekeeping issues were the basis for his termination. Sutherland contends that RBDC had a duty to follow § 1095a, that they breached this duty by terminating him, and that the Nevada Supreme Court has not yet held that physical harm is a requirement for proving negligent supervision.

RBDC replies that wrongful termination claims are limited to violations of state public policy, there is no Nevada public policy protecting potential future garnishment activity, and Sutherland has based his claim on a federal statute rather than Nevada public policy. RBDC argues that the federal statute does not protect potential future garnishment or pre-garnishment activity and only protects individuals once an order of garnishment has been issued. RBDC further contends that the claim would fail under Sutherland's interpretation of the statute because none of the people who were part of the decision to terminate Sutherland knew about the student loan or potential garnishment and instead terminated him for falsifying his time records. RBDC contends that the concept of constructive notice is inapplicable and does not establish a causal connection between the garnishment activity and Sutherland's termination. RBDC also argues that Sutherland cannot assert a private right of action under the federal statute because he was never granted leave to amend his Complaint to include such a claim.

RBDC also replies that Sutherland has not presented a viable claim for negligent supervision because he failed to identify who performed the wrongful act and who was aware of the act but failed to protect against it. RBDC contends that although the Nevada Supreme Court has not yet ruled that physical harm is an element of negligent supervision, federal district courts in Nevada have, on the basis of Nevada's economic loss doctrine. RBDC further contends it had no duty to Sutherland and there is no causal connection between any of the notices of potential future garnishment activity and Sutherland's

termination.

**II. DISCUSSION**

      Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarmo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable the non-moving party. Id.

      To succeed on any of his claims, Sutherland must prove a causal link between his termination and the garnishment activity. For his wrongful discharge claim in count three, Sutherland "must demonstrate that his protected conduct was <u>the</u> proximate cause of his discharge." Allum v. Valley Bank of Nev., 970 P.2d 1062, 1066 (Nev. 1998). Additionally, Sutherland's claim for negligent supervision in count one requires causation as one of the elements. Bower v. Harrah's Laughlin, Inc., 215 P.3d 709, 724 (Nev. 2009). Sutherland's Complaint does not allege a violation of 20 U.S.C. § 1095a(a)(8), which prevents employers from discharging employees "by reason of the fact that the individual's wages have been subject to garnishment." However, any such claim also would require Sutherland to show that RBDC discharged him "by reason of" the fact that his wages were subject to garnishment.

      Viewing the evidence and all reasonable inferences therefrom in the light most

favorable to Sutherland, no genuine issue of material fact remains that Sutherland cannot show causation for any of his claims.  Only Crudo, Ondell, and Hernandez were involved in the decision to terminate Sutherland.  Each state they were not aware of Sutherland's student loan or the potential future garnishment at the time they terminated Sutherland.  Sutherland presents no evidence raising a genuine issue of material fact that they had such knowledge.

Instead, Sutherland argues that Hernandez, who approved the termination, had constructive notice as the director of Human Resources, based on the employment verification letter TG sent to RBDC, and TG's collection records showing TG had some additional pre-garnishment contact with RBDC.  However, there is no evidence that Hernandez ever saw the verification letter or had any pre-garnishment contact with TG.  The fact that someone at the Santa Monica office uninvolved with the decision to terminate Sutherland knew about a potential future wage garnishment is insufficient.  Rather, there must be a causal connection between the decisionmakers' knowledge and Sutherland's termination.  See Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003) ("In order to prevail, Raad must present evidence from which a reasonable trier of fact could conclude that the school principals who refused to hire her were aware that she had engaged in a protected activity.")  Because there is no evidence raising a genuine issue of material fact that Crudo, Ondell, or Hernandez were aware of any potential garnishment before Sutherland was terminated, Sutherland has failed to raise an issue of fact that the garnishment activity had a causal connection to his termination.  A reasonable fact finder therefore could not find Sutherland was fired by reason of the garnishment activity, and RBDC is entitled to judgment as a matter of law.

///

///

///

7

**III. CONCLUSION**

  IT IS THEREFORE ORDERED that Defendant Red Bull Distribution Company, Inc.'s Motion for Summary Judgment (Doc. #26) is hereby GRANTED.

  IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendant Red Bull Distribution Company, Inc. and against Plaintiff Valgene Sutherland.

DATED: July 31, 2013

                _____
                PHILIP M. PRO
                United States District Judge